UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY BROD, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>SIOUX HONEY ASSOCIATION, COOPERATIVE,<br><br>Defendant._____/ | No. C-12-1322 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>**(Docket No. 25)** |

## I. INTRODUCTION

Plaintiff Gregory Brod ("Brod") filed the instant class action lawsuit against Defendant Sioux Honey Association Cooperative ("Sioux Honey") alleging that it violated state law by marketing its "Sue Bee Clover Honey" in California as "Honey," despite the fact that it did not contain pollen. Plaintiff argues that by not containing pollen, Sioux Honey's product did not meet applicable standards for "Honey" established in California's Food and Agricultural Code. Brod's suit asserts causes of action for violation of California's Consumers Legal Remedies Act and Unfair Competition Law, as well as for breach of implied contract and breach of implied warranty of merchantability. Currently pending before the Court is Sioux Honey's motion to dismiss. Sioux Honey's motion argues, among other things, that the Plaintiff and potential class members lack standing to sue based on the facts alleged in the complaint, that claims asserted by Plaintiffs are preempted by federal food and drug laws, and that Plaintiff's causes of action fail to state a claim under Fed. R. Civ. P. 12(b)(6).

## II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Brod bought a bottle of Sue Bee Clover Honey at a store in San Rafael, California some time before January 12, 2012. Brod Decl. ¶ 3 (Docket No. 1). Prior to purchasing the bottle, Brod read the "Clover Honey" label and the "U.S. Grade A Fancy White Pure Honey" representation printed on the front of the bottle. First Amended Complaint ("FAC") ¶ 8 (Docket No. 19). At some point after his purchase, Brod learned that all the pollen had been filtered out of the bottle of Sue Bee Clover Honey during the manufacturing process. *See* FAC ¶ 6. He alleges that Sioux Honey's act of filtering the pollen out of its honey renders its product incapable of meeting California's Food and Agricultural Code standards for products sold as "honey"; he asserts that California law requires honey to "contain pollen unless the removal of such pollen was unavoidable in the removal of foreign inorganic or organic matter." FAC ¶ 5 (citing Cal. Food and Agric. Code § 29413(e)). Had he known that Sioux Honey's Clover Honey did not comply with California standards, he alleges that "he would not have purchased the Sue Bee Honey." FAC ¶ 8.

On January 19, 2012, Brod filed a class action lawsuit against Sioux Honey in the Superior Court for the State of California in Marin County. Not. of Removal ¶ 1 (Docket No. 1). Sioux Honey removed the suit to federal district court on March 16, 2012, pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction. Not. of Removal ¶ 4. Brod filed his FAC on April 23, 2012, *see* Docket No. 19, and a Motion to Relate this case to another one called *Ross v. Sioux Honey Association*, C-12-1645, on April 25, 2012, *see* Docket No. 20. This Court granted Brod's Motion to Relate on May 3, 2012. *See* Docket No. 23.

Brod's FAC advances the four following causes of action:

(1) That Defendant's marketing and sale of Sue Bee Clover Honey in California as "honey" violated the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et. seq.*, because the product was mislabeled and misrepresented material facts about its quality, characteristics, and ingredients. *See* FAC ¶¶ 34-40.

(2) That Defendant's marketing and sale of Sue Bee Clover Honey in California as "honey" violated California Business and Professions Code §§ 17200, *et. seq.*, because the

1  product's mislabeling constituted an "unlawful, unfair, fraudulent, or deceptive business act
2  or practice." FAC ¶¶ 45-51.
3  (3) That Defendant's marketing and sale of Sue Bee Clover Honey in California as
4  "honey" violated "California's common law doctrine of breach of implied contract" because
5  Sioux Honey "was not legally entitled to sell its product as 'honey' . . . in the State of
6  California," and by doing so it made "material misrepresentations and omissions of fact."
7  FAC ¶¶ 54-58.
8  (4) That Defendant's marketing and sale of Sue Bee Clover Honey in California as
9  "honey" breached California's implied warranty that goods shall be merchantable. Since
10 Sioux Honey's product "does not comply with the ordinary standards for such goods, and is
11 not of the accepted standards of quality of such goods," Defendant breached its implied
12 warranty with purchasers that the honey sold "was fit for ordinary use by consumers, was of
13 accepted standards, and would pass ordinarily and without objection in the trade for such
14 goods." FAC ¶¶ 61-69.
15 The FAC seeks as "a permanent injunction or other appropriate equitable relief" prohibiting Sioux
16 Honey from "marketing its Sue Bee Honey to consumers in the State of California," and "actual and
17 statutory damages, restitution and punitive damages" as well as "reasonable costs and attorneys'
18 fees." FAC at p. 13.
19 Sioux Honey filed a motion to dismiss arguing, among other things, that the Plaintiff and
20 similarly situated members of the class lack standing to sue under Article III of the U.S.
21 Constitution, that federal food and drug laws preempt all of the Plaintiffs' state law based causes of
22 action, and that Plaintiffs' causes of action otherwise fail to state a claim under Fed. R. Civ. P
23 12(b)(6).

### III. DISCUSSION

A. Standing - Legal Standard

Sioux Honey's motion asks this Court to dismiss Brod's class action complaint under Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction. In its motion, Sioux Honey argues that Brod and other similarly situated class members cannot satisfy "the injury-in-fact- requirement of

constitutional standing." Def.'s Motion at p. 3. Under Rule 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction if the plaintiff cannot satisfy the standing requirements set by Article III of the U.S. Constitution. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010). "Because standing . . . [pertains] to federal courts' subject matter jurisdiction, [it is] properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler,* 598 F.3d at 1121–22. "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Here, Sioux Honey asserts only a facial challenge; therefore, the Court must accept all allegations of fact in the complaint as true. *See Warren*, 328 F.3d at 1139 (citing *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001)).

1. <u>Article III Standing</u>

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 471 (1982).

> To satisfy the "case" or "controversy" requirement of Article III, which is the "irreducible constitutional minimum" of standing, a plaintiff must, generally speaking, demonstrate that he has suffered "injury in fact," that the injury is "fairly traceable" to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–72, 102 S. Ct. 752, 70 L.Ed.2d 700 (1982).

*Bennett v. Spear,* 520 U.S. 154, 162 (1997). Although evidence is to be viewed and inferences are to be drawn in Plaintiffs' favor (as the nonmoving parties), Plaintiffs have the burden of proving that they have standing to sue under Article III. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (stating that "[t]he party invoking federal jurisdiction bears the burden of establishing [the] elements [of constitutional standing]"); *Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1137 (10th Cir. 2006) (noting that "[t]he burden to establish prudential standing is on the plaintiff bringing the action").

///

///

2. <u>Labeling of Sue Bee Honey</u>

Plaintiff's claims against Sioux Honey stem *solely* from the fact that it labels and markets its Sue Bee Clover Honey in California stores as "honey," despite the fact that it has had all pollen filtered or otherwise removed from the product. FAC ¶ 14. That the pollen has been filtered or otherwise removed from the product does not seem to be contested by the Defendant. *See e.g.* Def.'s Motion (no claim is made that Plaintiff's beliefs regarding the removal of pollen from Sue Bee Clover Honey are mistaken or incorrect). Because Sioux Honey removed the pollen from the honey product at issue, Brod claims that it cannot be lawfully marketed as honey in the State of California.

Brod cites as authority § 29413(e) of the California Food and Agriculture Code: This section provides:

> Honey sold as described in subdivision (d) shall not have added to it any food ingredient, including food additives, nor shall any other additions be made other than honey. Honey shall not have any objectionable matter, flavor, aroma, or taint absorbed from foreign matter during its processing and storage. Honey shall not have begun to ferment or effervesce *and no pollen or constituent particular to honey may be removed* except where unavoidable in the removal of foreign inorganic or organic matter.

Cal. Food & Agric. Code § 29413(e) (emphasis added). Section 29671 in turn provides "it is unlawful for any person to . . . sell any honey, adulterated honey or any product which is marked, labeled, or designated as honey, *which does not conform to the provisions of this chapter*." (emphasis added). Brod thus claims that once pollen is removed from honey in violation of § 29413(e) the product is no longer salable in the state as "honey" under § 29617. Brod also cites Cal. Food & Agric. Code § 29673, which makes it "unlawful for any person to *mislabel* any container or subcontainer of honey or place any false or misleading statement on any wrapper, label, or lining of any container of honey, or on any placard which is used in connection with or which has reference to any honey." Cal. Food & Agric. Code § 29673 (emphasis added).

///
///
///

### 3. Injury-In-Fact

As a result of Sioux Honey's marketing and labeling of Sue Bee Clover Honey as "honey" even though all pollen had been filtered out, Brod claims, essentially, that he and other members of the prospective class were misled into purchasing the product. In multiple places in his complaint, he states that had he "known the Sue Bee Honey did not comply with California standards, he would not have purchased the Sue Bee Honey." FAC ¶¶ 8, 25, 42. He claims that "Plaintiff and Class members suffered economic losses" (FAC ¶ 26) and "have lost money and property"(FAC ¶ 53) as a result of the Defendant's alleged misconduct. In other places in the FAC, Plaintiff alleges that he and other purchasers of the honey generally "suffered injury in fact" (FAC ¶ 53) and "have been irreparably harmed" (FAC ¶ 43), although he identifies no specific injury that he or others like him received when they purchased or consumed the honey.[1]

Sioux Honey argues that Brod "cannot allege an 'injury-in-fact' merely by claiming, after the fact, that the honey was indiscernibly dissimilar from what he thought he was buying." Def.'s Motion at p. 4. Defendant's motion notes that Brod fails to allege that the "honey product was of inferior quality, that he overpaid for [the] honey, that [the] honey lost its usefulness, or that he was otherwise harmed by purchasing the product." *Id*. at 4. Without more, Sioux Honey asserts, Brod "cannot establish that he incurred injury-in-fact that is concrete and particularized and actual and imminent," as required by Article III. *Id*. (internal quotation marks omitted).

In support of this conclusion, Sioux Honey cites the Fifth Circuit's decision in *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002). In *Rivera*, the Fifth Circuit found that a group of plaintiffs lacked standing to sue Wyeth for its role in distributing Duract, a non-steroidal anti-inflammatory drug prescribed for short-term management of acute pain, when they could demonstrate no concrete injury flowing from their use of the drug. Plaintiffs had sued Wyeth on the theory that it had failed to adequately warn of the drug's dangers in violation of the Texas Deceptive

---

[1] Indeed, the closest Brod gets to describing an actual harm resulting from purchasing Sue Bee Clover Honey occurs toward the end of his fourth cause of action for breach of implied warranty, where he attempts to assign a minimum value to the harm alleged to have occurred. Discussing the consequences of Sioux Honey's alleged breach, Brod claims that "Plaintiff and other members of the Class have been injured and have suffered damages, including, but not limited to, the value of the Sue Bee Honey had it been fit for its ordinary purposes." FAC ¶ 70.

Trade Practices Act, the implied warranty of merchantability, and common law unjust enrichment. *Rivera*, 283 F.3d at 317. The *Rivera* court found that "[b]y plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that – the benefit of her bargain." *Id.* at 320. Despite plaintiffs' claims to the contrary, "[h]ad Wyeth provided additional warnings or made Duract safer, the plaintiffs would be in the same position they occupy now," and as such "they cannot have a legally protected contract interest." *Id.* Relying on *Rivera* and other so-called "benefit of the bargain" injury theory cases,[2] Sioux Honey argues that mere averments that Plaintiffs would not have purchased the Sue Clover Honey had they known it did not contain pollen is *not* enough to "plead actual 'injury-in-fact' to confer Article III standing." Def.'s Motion at 6.

Brod responds by arguing, generally, that in "Article III contexts, courts have recognized that the injury in fact requirement is not a substantial hurdle and that a minimal, identifiable trifle of injury is sufficient." Pl.'s Opp. at p. 3 (citing *Labriola v. Bank of Am., Nat. Ass'n*, 2012 WL 1657191 (N.D. Cal. May 10, 2012); *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008). While that may be true, the cases identifying a 'trifle of injury' cited by Brod are readily distinguishable from the present situation. In *Labriola*, Judge Wilken found that the plaintiff there "sufficiently identified an economic injury to support standing" in alleging that defendant's delay in paying a commission for at least a month "deprived [plaintiff] of the use of his money, including the ability to earn interest from it." *Labriola*, 2012 WL 1657191 at * 6. In *Preminger*, the Ninth Circuit had "no trouble concluding that [a plaintiff] has direct standing to bring an as-applied First Amendment challenge" to a Department of Veterans Affairs regulation that was "barring him from registering voters." *Id.* at 764.

However, in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), the California Supreme Court found that a plaintiff had standing to bring a suit alleging that "Kwikset falsely

---

[2] *See also Medley v. Johnson & Johnson,* 2011 WL 159674, at *2 (D.N.J. Jan.18, 2011) (finding that plaintiffs lacked standing where the economic injury for which they sought redress was the price they paid for shampoo and no adverse health consequences were pled); *Young v. Johnson & Johnson*, 2012 WL 1372286 (D.N.J. Apr. 19, 2012) (finding that plaintiff's complaint amounts to no more than subjective allegations that the presence of any amount of trans fat and partially hydrogenated oils renders Defendant's product unhealthy, and, as such, is insufficient to establish injury-in-fact).

7

marketed and sold locksets labeled as 'Made in U.S.A.' that in fact contained foreign-made parts or involved foreign manufacture," in violation of state unfair competition and false advertising laws. *Kwikset Corp.*, 51 Cal. 4th at 317. Responding to Kwikset's challenge to the plaintiff's standing to sue, the Court analogized the case to one that "is based on a fraud theory involving false advertising and misrepresentations to consumers." *Id*. at 326. In such cases, "a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct," which in that case meant that "these plaintiffs need only allege economic injury arising from reliance on Kwikset's misrepresentations." *Id*. at 888-889. The Court found that plaintiff's complaint satisfied these requirements because they specifically alleged that "(1) Kwikset labeled certain locksets with "Made in U.S.A." or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise." *Id*. at 327-28. "Simply stated: labels matter . . . the marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source." *Id*. at 328. Where, as in *Kwikset*, a customer relies

> on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately. This economic harm – the loss of real dollars from a consumer's pocket – is the same whether or not a court might objectively view the products as functionally equivalent.

*Kwikset*, 51 Cal. 4th at 329. Thus, the Court held that "a consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement . . . by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation." *Id*. at 330.

As in *Kwikset*, Brod alleges that Sioux Honey labeled its Sue Bee Clover Honey as 'Honey,' that these representations were false as a matter of law under applicable sections of the California Food and Agriculture Code, that consumers saw and relied on the labels for their truth in purchasing Sioux Honey's honey, and that plaintiffs would not have bought the honey otherwise. Plaintiffs allegations match precisely with the standard laid out by the *Kwikset* Court for establishing standing.

It appears then that under *Kwikset*, California law recognizes an inquiry when a product is mislabeled in violation of the law and consumers rely on that labeling in purchasing the product or paying more than they otherwise would have. That injury, defined and established by California law, satisfies the injury-in-fact requirement of Article III. Indeed, *Kwikset* applied federal constitutional standards in assessing the injury-in-fact requirement of standing under the United States Constitution. 51 Cal. 4th at 322. Absent binding authority to the contrary, the Court finds *Kwikset* persuasive.[3]

B.  Federal Preemption

Sioux Honey next challenges the Plaintiffs' FAC on the basis that Plaintiffs' state law based claims are preempted by federal law. This aspect of Defendant's motion is brought pursuant to Rule 12(b)(6).

1.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to

---

[3] *Riviera* did not address the specific issue whether violation of a state law labeling law can create the requisite injury-in-fact. In any event, the Fifth Circuit decision in *Riviera* is not binding on this Court.

9

a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

### 2. Federal Preemption

Sioux Honey's motion maintains that Brod's causes of action must be dismissed because they are preempted by federal law. As a general matter, "Congress has the power to preempt state law" by operation of the Supremacy Clause in Article VI of the U.S. Constitution. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). In assessing whether Congress has exercised this power, courts must look to Congress' purpose in promulgating a law. *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (noting that "the purpose of Congress is the ultimate touchstone in every pre-emption case"). Preemption exists where "it is impossible for a private party to comply with both state and federal law . . . and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (internal citations and quotation marks omitted).

Sioux Honey contends that Brod's state law claims are preempted by 21 U.S.C. § 343-1, which is part of the Food, Drug & Cosmetic Act ("FDCA"). Congress amended the FDCA by enacting the Nutrition Labeling and Education Act of 1990 ("NLEA"), stating that its purpose was, among other things, to "clarify and to strengthen [the FDA's] authority to require nutrition labeling on foods." *National Council for Improved Health v. Shalala*, 122 F.3d 878, 880 (10th Cir. 1997) (quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990 U.S.C.C.A.N. 3336, 3337).

As part of the NLEA, Congress added a preemption provision to the FDCA that expressly preempts state laws addressing certain subjects covered by the FDCA, including food labeling requirements. *See* 21 U.S.C. § 343-1(a). That section provides in relevant part as follows:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce –
>
> . . . .
>
> (3) any requirement for the labeling of food of the type required by section . . . 343(i) . . . that is not identical to the requirement of such section.

10

21 U.S.C. § 343-1(a)(3). The FDCA gives the Food and Drug Administration ("FDA") the responsibility to protect the public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). Pursuant to this responsibility, the FDA has promulgated a number of regulations concerning food safety and labeling. *See e.g.*, 21 C.F.R. § 101.1 *et seq*. The FDA promulgated 21 C.F.R. § 100.1(c)(4) which provides that a state requirement is "not identical to" federal requirements when:

> the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food . . . that:
>
> (i) Are not imposed by or contained in the applicable provision (including any implementing regulation) . . . ; or
>
> (ii) Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation).

The federal statute centrally at issue here (to which state law must impose identical requirements) is 21 U.S.C. § 343(i)). It provides in relevant part that "a food shall be deemed to be misbranded "[u]nless its label bears (1) *the common or usual name of the food*, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient." 21 U.S.C. § 343(i) (emphasis added). Section 343(i) applies to foods that are not otherwise subject to specific regulatory definitions. Neither party asserts that honey is "a food for which a definition and standard of identity has been prescribed by regulations." *See* 21 U.S.C. § 343(g) (applicable in situations where FDA has prescribed a definition or standard of identity by regulation). Indeed, the Defendant expressly stated that no such regulation exists. *See* Def.'s Motion at 9. Thus, § 343(i) applies to honey. Accordingly, Sioux Honey asserts that NELA requires Sue Bee Clover Honey to be labeled as 'honey' based on the common or usual name assigned to that product. *See* Def.'s Motion at 9. It so asserts even though Sue Bee Clover Honey contains no pollen.

The Court agrees. The parties do not dispute that Sue Bee Clover Honey meets the typical definition of honey found in dictionaries. Webster's New World Dictionary (3rd Coll. ed. 1988) defines honey as "a thick, sweet, syrupy substance that bees make as food from the nectar of flowers and store in honeycombs. Random House Webster's College Dictionary (2d ed. 2001) likewise

11

1 defines honey as "a sweet viscid fluid produced by bees from the nectar collected from flowers and
2 stored in nests or hives as food." As Sioux Honey demonstrates in its compendium of state honey
3 statutes (attached as Ex. B to Def.'s Motion),[4] states throughout this nation have similarly defined
4 honey. None of these definitions require that honey contain non-filtered pollen.

5       That the common or usual name for Sue Bee Clover Honey is "honey" is further
6 substantiated by prior regulations establishing varying grades of honey. *See* U.S. Department of
7 Agriculture's "United States Standards for Grades of Extracted Honey." Def.'s Motion, Ex. A.
8 These standards, which used to be published in the Code of Federal Regulations ("CFR"),
9 established a voluntary grading metric for determining the quality of honey sold within the U.S.
10 Within that metric was a provision that set "Grade A" filtered style honey as containing only "a trace
11 of pollen grains or other finely divided particles in suspension." Def.'s Motion, Ex. A at p. 10.
12 Although the Department of Agriculture removed these standards from the CFR on December 4,
13 1995 as part of a "National Performance Review program to eliminate unnecessary regulations and
14 improve those that remain in force" (Removal of U.S. Grade Standards and Other Selected
15 Regulations, 60 Fed. Register 62172-01, Monday, December 4, 1995), the standards substantiate
16 that even filtered honey was considered honey.[5]

17       Finally, when pressed at the hearing to identify what the common or usual name of Sue Bee
18 Clover Honey is (*i.e.*, what should the product be called in order to comply with 21 U.S.C. § 343(i)),
19 Defendant was unable to come up with an alternative to "honey."[6] Thus, under § 343(i), Sue Bee
20 Clover Honey must be labeled as "honey."

21       While federal law (§ 343(i)) requires Sue Bee Clover Honey be labeled "honey," California
22 law prohibits the sale of honey or any product "which is marked, labeled, or designated as honey . . .
23 in any container . . . which does not conform to the provisions of this Chapter." Cal. Food & Agric.
24 Code § 29671. This Chapter includes Cal. Food & Agric. Code § 29413(e) which prohibits the

---

[4] Compendium attached as Appendix A to this Order.

[5] The Court takes judicial notice of the Federal Register.

[6] Plaintiff's request for judicial notice of a Petition filed by Sioux Honey in 2006 asking the FDA to change provisions of the federal honey standard is DENIED because the document is irrelevant. What are relevant is the applicable statutes and adopted regulations.

1  removal of pollen (except where unavoidable in the removal of foreign inorganic or organic matter)
2  from honey sold in California. Cal. Food & Agric. Code § 29673 further makes it unlawful for any
3  person to "mislabel any container" of honey. It is precisely because of these California laws that
4  Plaintiff contends Sioux Honey has violated California law and that Sue Bee Clover Honey cannot
5  be sold in California as "'honey.'" Thus, while federal law requires Sue Bee Clover Honey be
6  labeled with its common name, "honey," California law prohibits it.

7  This presents a classic case of conflict preemption, where it is "impossible for a private party
8  to comply with both state and federal law." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373
9  U.S. 132, 142-143 (1963). It also presents a case of obstacle preemption where the state law "stands
10 as an obstacle to the accomplishment and execution of the full purposes and objections of
11 Congress." *Crosby*, 530 U.S. at 373. As the district court held in *Ries v. Hornell Brewing Co., Inc.*,
12 2011 WL 1299286 at *2 (N.D. Cal. Apr. 4, 2011), "state law that imposes obligations that are 'not
13 identical to' those imposed in Section . . . 343(i) of the [FDCA], and the FDA's implementing
14 regulations for these sections, are expressly preempted."

15 The Court notes that its finding of preemption does not imply that California is powerless to
16 act in this arena. For instance, if California required disclosure on its labels that the honey was *e.g.*,
17 "filtered" or "pollen free," that would appear not to conflict expressly with § 343(i). California
18 simply cannot under § 343(i) ban the use of the label "honey" for products which are commonly and
19 usually called honey.

20 At the hearing, Plaintiff attempted to avoid federal preemption by characterizing this case not
21 as a labeling matter, but as one concerning California's substantive ban on the sale of products such
22 as filtered honey. But its complaint makes clear that the violation of California law at issue here
23 turns not on the content of the product but on its label. Throughout the complaint, Plaintiff makes
24 clear that the gravamen of its complaint is the labeling of Sioux Honey's product "as 'honey.'"
25 Paragraph 5 of the FAC states, "In California, for a product to be sold *as 'honey'* it must contain
26 pollen . . . .," and Paragraph 6 states "Sue Bee Honey cannot be sold *as honey* because its pollen is
27 removed." (Emphasis added). The same assertion of wrongful conduct in selling Sue Bee's Honey
28

1  "as 'honey'" is repeated in Paragraphs 23, 25, 41, 42, 50, 51, 56, 66, and 68.  At bottom, Plaintiff's

2  complaint is about the *labeling* of Defendant's product "as 'honey.'"

3        The Court thus concludes that the California laws invoked by Plaintiff in his complaint

4  impose a labeling requirement that squarely conflicts with federal labeling law.  It is therefore

5  preempted.

6  C.     Commerce Clause:

7        Sioux Honey further argues that California's laws regulating the sale of honey violate the

8  dormant Commerce Clause.  *See* Def.'s Motion at pp. 11-12.  Defendant bases its argument on the

9  belief that "one set of label rules" would "apply in California and another for everywhere else."  *Id*.

10 at 12.  The Supreme Court has held, "[w]here the statute regulates even-handedly to effectuate a

11 legitimate local public interest, and its effects on interstate commerce are only incidental, it will be

12 upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative

13 local benefits."  *Pike v. Bruce Church, Inc*., 397 U.S. 137, 142 (1970).  As this Court holds

14 Plaintiff's state law claims are preempted, Defendant's Commerce Claim argument is moot.

15 D.     FAC Otherwise Fails to State A Claim:

16       Sioux Honey further argues that Brod fails to state a claim under each of the four causes of

17 action he advances in his First Amended Complaint.  Defendant identifies his remaining arguments

18 as falling into two distinct groups: (1) that Brod's state law claims are insufficient because he is

19 unable to show that he suffered damages, and (2) that he fails to allege the essential factual elements

20 of each of his claims.  The Court need not reach these arguments since these state claims are all

21 based on Sioux Honey's labeling violation and are preempted.[7]

---

[7] The Court nonetheless notes that Plaintiff's third cause of action for breach of implied contract is plainly meritless.  Under California law, "a cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct."  *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008).  Section 1621 of the California Civil Code defines "an implied contract" as a contract where "the existence and terms of which are manifested by conduct."  Cal. Civ. Code § 1621.  The FAC does not include any specific allegations suggesting that the conduct of the parties here manifested an intent to create a contract, nor what the terms of that contract might be.  On this point, the FAC simply states that the Plaintiff and similarly situated consumers conferred benefits on the Defendant.  *See* FAC ¶ 57.  It does not describe the 'bargained-for exchange' at the core of the implied contract, nor does it illuminate any contractual terms.  Indeed, Brod does not defend this challenge to his third cause of action anywhere in his opposition brief.

### IV. CONCLUSION

For the reasons discussed above, the Court grants Sioux Honey's motion to dismiss. Plaintiff's state law claims are preempted. The dismissal is without prejudice. Should Plaintiff seek to file an amended complaint asserting (consistent with Fed. R. Civ. P. 11) claims that are not preempted, he shall do so within 30 days of the date of this order.

This order disposes of Docket No. 25.

IT IS SO ORDERED.

Dated: September 11, 2012

_____
EDWARD M. CHEN
United States District Judge

# APPENDIX A

Ala. Code § 2-11-120 (honey is "the nectar of plants that has been transformed by, and is the natural product of the honeybee, either in the honeycomb or taken from the honeycomb and marked in a liquid, crystallized or granulated condition.");

Conn. Gen. Stat. § 21a-24(a) ("'honey' means the natural product of the honey bee taken from the nectar of flowers, transformed by such bee . . . .");

Iowa Code § 190.1, at subdiv. 4 ("Honey is the secretion of floral nectar collected by the honeybee and stored in wax combs . . . .");

Mont. Code Ann. § 50-31-103(19) ("'Honey' means the nectar and saccharine plant exudations, gathered, modified, and stored in the comb by honey bees . . . .");

Nev. Rev. Stat. § 585.355 ("'honey' means the natural product of honeybees, drawn from the nectar of flowers, transformed by the bees and stored in a honeycomb and later marketed . . . in a liquid, candied or granulated condition.");

N.D. Cent. Code § 19-06.1-01 ("'honey' . . . mean[s] the nectar of plants that has been transformed by and is the natural product of the honeybee."); N.H. Rev. Stat. Ann. § 429:13(VII-1) (same);Tex. Agric. Code Ann. § 131.001(14) (same);

Ohio Admin. Code 901:3-46-01(C) ("'Honey' means the nectar and saccharine exudation of plants that has been gathered, modified, and stored in a honeycomb by honeybees.");

Okla. Stat. Tit. 78, § 78-81 ("'honey' . . . shall mean the nectar of plants or flowers that has been transformed by, and is the natural product of the honeybee . . . and marketed in a liquid, candied or granulated condition.");

Or. Admin. R. 603-051-0365(9) ("'Honey' means the natural sweet substance produced by bees resulting from the harvest of plant nectar or plant secretions that has been collected and transformed by the deposition, dehydration, and storage in comb to ripen and mature.");

31 Pa. Cons. Stat. Ann. § 381 ("honey" . . . shall mean the nectar of flowers that has been transformed by, and is the natural product of the honey-bee . . . marketed in a liquid, candied or granulated condition."); N.Y. Agric. & Mkts. Law § 205 (same);

Utah Code Ann. § 4-5-20(1)(a) ("'Honey' means the natural sweet substance produced by honeybees from the nectar of plants or from secretions of living parts of plants which the bees collect, transform by combining with specific substances of their own, then deposit, dehydrate, store, and leave in the honeycomb to ripen and mature.");

16

**United States District Court**
For the Northern District of California

Wash. Rev. Code § 69.28.310 ("'honey' . . . is the nectar of floral exudations of plants, gathered and stored in the comb by honey bees (apis mellifica).");

W. Va. Code § 19-2D-1 ("'Honey' means the nectar and saccharine exudation of plants as gathered, modified and stored in comb by honeybees."); Wyo. Stat. Ann. § 11-8-101(a) (same).