**United States District Court**
For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                  NORTHERN DISTRICT OF CALIFORNIA

7

8  GREGORY BROD, *on behalf of himself and*          No. C-12-1322 EMC
   *all others similarly situated*,
9
                                                     **ORDER GRANTING DEFENDANT'S**
10             Plaintiff,                             **MOTION TO DISMISS**

11        v.                                          **(Docket No. 56)**

12  SIOUX HONEY ASSOCIATION,
    COOPERATIVE,
13
               Defendant.
14  _____/

15

16                        I.    **INTRODUCTION**

17        Plaintiff Gregory Brod ("Brod") has filed a class action lawsuit against Defendant Sioux

18  Honey Association Cooperative ("Sioux Honey") alleging that it violated state law by marketing its

19  "Sue Bee Clover Honey" in California simply as "Honey," without disclosing the fact that it did not

20  contain pollen.  Plaintiff contends that the California Food and Agricultural Code requires "honey

21  products marketed in California that have had their natural pollen unnecessarily removed" to be

22  "sold with a notation which discloses this fact."  Second Amended Class Action Complaint ("SAC")

23  (Docket No. 55) ¶ 5.  Brod advances causes of action under California's Consumers Legal Remedies

24  Act and Unfair Competition Law, as well as for breach of express and implied warranty.  Sioux

25  Honey has filed a motion to dismiss Brod's complaint arguing that Plaintiff and members of his

26  purported class lack standing to sue based on the facts alleged in the complaint, that the claims

27  asserted by Plaintiff are preempted by federal food and drug laws, that Plaintiff's causes of action

28  fail to state a claim under Fed. R. Civ. P. 12(b)(6), and that Plaintiff's claims are barred by the

United States District Court

For the Northern District of California

1  Commerce Clause of the U.S. Constitution.  *See* Def.'s Mot. to Dismiss (Docket No. 56).  Having

2  considered the parties' briefs and accompanying submissions, as well as the oral argument of

3  counsel, the Court hereby **GRANTS** Defendant's motion for the reasons discussed herein.

4  **II.    FACTUAL & PROCEDURAL BACKGROUND**

5        Plaintiff Gregory Brod bought a bottle of Sue Bee Clover Honey ("Sue Bee Honey") at a

6  store in San Rafael, California some time before January 12, 2012.  Brod Decl. ¶ 3 (Docket No. 1).

7  Prior to purchasing the bottle, Brod read the "Clover Honey" label and the "U.S. Grade A Fancy

8  White Pure Honey" representation printed on the front of the bottle.  SAC ¶ 8.  At some point after

9  his purchase, Brod learned that all the pollen had been filtered out of the bottle of Sue Bee Honey

10  during the manufacturing process.  *See* SAC  ¶¶ 6, 21-22.  He alleges that Sioux Honey's act of

11  filtering all naturally-occurring pollen out of Sue Bee Honey renders it incapable of meeting certain

12  California Food and Agricultural Code standards for products sold as "honey," making it unlawful to

13  sell the product in the state "without disclosures that it is filtered or pollen-free."  SAC ¶ 15 (citing

14  Cal. Food & Agric. Code § 29413(e)); *see also* SAC ¶ 5, 14.  Had Plaintiff known that Sioux

15  Honey's Sue Bee Honey did not comply with California standards, he alleges that he and similarly

16  situated consumers "would not have purchased the Sue Bee Honey."  SAC ¶¶ 8, 25.

17        On January 19, 2012, Brod filed a class action lawsuit against Sioux Honey in the Superior

18  Court for the State of California in Marin County.  Not. of Removal ¶ 1 (Docket No. 1).  Sioux

19  Honey, a citizen of the State of Iowa, thereafter removed the suit to federal district court pursuant to

20  28 U.S.C. § 1332 on the basis of diversity jurisdiction.  Not. of Removal ¶¶ 3-5.  Brod filed a First

21  Amended Class Action Complaint on April 23, 2012, *see* Docket No. 19, and a Motion to Relate this

22  case to another one called *Ross v. Sioux Honey Association*, C-12-1645, *see* Docket No. 20, which

23  this Court subsequently granted, *see* Docket No. 23.  Sioux Honey then filed a motion to dismiss the

24  amended complaint, which this Court granted with leave to amend by an order dated September 11,

25  2012.  *See* Motion to Dismiss (Docket No. 25); Order (Docket No. 52).  Brod filed his Second

26  Amended Complaint on October 11, 2012.  Brod's SAC advances the following four causes of

27  action:

28

United States District Court
For the Northern District of California

(1)      That Defendant's marketing and sale of Sue Bee Honey in California simply as "honey" violated the California Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750, *et. seq.*, because the product did not include "disclosures that it is filtered or pollen free as required by the California Food & Agriculture Code's proscription against false or misleading labeling of honey." SAC ¶ 41;

(2)      That Defendant's marketing and sale of Sue Bee Honey in California simply as "honey" violated California's Unfair Competition Law (UCL), Cal. Bus. and Prof. Code §§ 17200, *et. seq.*, because Sioux Honey's failure to adequately disclose the product's lack of pollen both violates provisions of the California Food & Agriculture Code, and is likely to deceive California consumers. SAC ¶¶ 45-53;

(3)      That Defendant's marketing and sale of Sue Bee Honey in California simply as "honey" breached Sioux Honey's express warranty that the product "was of normal quality and standards for such goods in this locale," and "was of a characteristic grade which complied with all applicable laws, and which had not been economically adulterated." SAC ¶¶ 54-60; and

(4)      That Defendant's marketing and sale of Sue Bee Honey in California simply as "honey" breached California's implied warranty of merchantability, codified at Cal. Comm. Code § 2314, because the product "does not comply with the ordinary standards for such goods" and was thus "not fit for its ordinary purpose and intended consumption as 'honey,'" and because it is marketed and sold "in contravention of the explicit statutory standards for honey in the State of California" and is thus "not merchantable in the State of California." SAC ¶¶ 63, 68.

Plaintiff seeks on behalf of himself and all other persons who purchased Sue Bee Honey in California after January 1, 2010, both "a permanent injunction or other appropriate equitable relief" prohibiting Sioux Honey from "marketing its Sue Bee Honey to consumers in the State of California," and "actual and statutory damages, restitution and punitive damages," as well as "reasonable costs and attorneys' fees." SAC at 12-13.

United States District Court

For the Northern District of California

1    Sioux Honey filed the now pending motion to dismiss on October 25, 2012.  Def.'s Mot. to

2    Dismiss (Docket No. 56).  Sioux Honey argues, among other things, that Plaintiff and similarly

3    situated members of the purported class lack standing to sue under Article III of the U.S.

4    Constitution because they have not incurred an "injury-in-fact," that federal food and drug laws

5    preempt Plaintiff's argument that California law mandates disclosure of the removal of pollen from

6    honey, that Plaintiff's four causes of action fail to state a claim under Fed. R. Civ. P 12(b)(6), and

7    that Plaintiff's claims are otherwise barred by the Commerce Clause of the U.S. Constitution.  In his

8    opposition brief, Brod concedes that his third cause of action for breach of an express warranty fails

9    to state a claim.  *See* Pl.'s Opp. Br. (Docket No. 62) at 2 n.1 ("Plaintiff does not contest Sioux's

10   motion with regard to the SAC's claim for Breach of Express Warranty").  Brod opposes the balance

11   of Defendant's legal arguments.

## III.   DISCUSSION

12

13   A.   Constitutional Standing

14   Sioux Honey's Motion to Dismiss asks this Court to dismiss Brod's class action complaint

15   under Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction.  In its motion, Sioux Honey

16   argues that Brod and other similarly situated class members do not have "the required injury-in-fact"

17   to assert standing for their claims "under Article III of the United States Constitution."  Def.'s Mot.

18   to Dismiss at 3.

19   Under Rule 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction

20   if the plaintiff cannot satisfy the standing requirements set by Article III of the U.S. Constitution.

21   *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010).  "Because

22   standing...[pertains] to federal courts' subject matter jurisdiction, [it is] properly raised in a Rule

23   12(b)(1) motion to dismiss."  *Chandler*, 598 F.3d at 1121–22.  "A jurisdictional challenge under

24   Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence."

25   *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Here, Sioux Honey

26   asserts only a facial challenge; therefore, the Court must accept all allegations of fact in the

27   complaint as true.  *See Warren*, 328 F.3d at 1139 ("Where jurisdiction is intertwined with the merits,

28   we must assume the truth of the allegations in a complaint unless controverted by undisputed facts in

United States District Court
For the Northern District of California

1 the record.") (citing *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)) (internal quotation

2 marks omitted).

3    1.   Legal Standard

4    "Article III of the Constitution limits the 'judicial power' of the United States to the

5 resolution of 'cases' and 'controversies.'"  *Valley Forge Christian College v. Americans United for*

6 *Separation of Church & State, Inc.,* 454 U.S. 464, 471 (1982).

7          To satisfy the "case" or "controversy" requirement of Article III,
8          which is the "irreducible constitutional minimum" of standing, a
           plaintiff must, generally speaking, demonstrate that he has suffered
           "injury in fact," that the injury is "fairly traceable" to the actions of the
9          defendant, and that the injury will likely be redressed by a favorable
           decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112
10         S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Valley Forge Christian College*
           *v. Americans United for Separation of Church and State, Inc.,* 454
11         U.S. 464, 471–72, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

12 *Bennett v. Spear,* 520 U.S. 154, 162 (1997).  Although evidence is to be viewed and inferences are

13 to be drawn in Plaintiff's favor (as the nonmoving party), Plaintiff has the burden of proving that he

14 has standing to sue under Article III.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)

15 (stating that "[t]he party invoking federal jurisdiction bears the burden of establishing [the] elements

16 [of constitutional standing]"); *Utah Shared Access Alliance v. Carpenter*, 463 F.3d 1125, 1137 (10th

17 Cir. 2006) (noting that "[t]he burden to establish prudential standing is on the plaintiff bringing the

18 action").

19    2.   Injury-In-Fact

20    This Court has already considered and rejected a similar standing argument advanced by

21 Sioux Honey in its motion to dismiss the First Amended Complaint ("FAC").  *See* Order Granting

22 Defendant's Motion to Dismiss (Docket No. 52).  Brod's Second Amended Complaint parallels the

23 FAC in stating claims against Sioux Honey that stem *solely* from its labeling and marketing Sue Bee

24 Honey in California stores simply as "honey," despite the fact that all naturally occurring pollen has

25 been filtered or otherwise removed from the product.  SAC ¶¶ 41, 49-51, 56, 63.  Sioux Honey does

26 not seem to contest Plaintiff's allegation that it removes pollen from Sue Bee Clover Honey.  *See*

27 *e.g.* Def.'s Mot. to Dismiss at 6 ("Nonetheless, the U.S. Grade A Honey legend confirms that the

28 honey has been filtered and contains only trace elements of pollen.").

**United States District Court**
For the Northern District of California

In his complaint, Brod argues that Cal. Food & Agric. Code § 29413(e)[1] makes non-salable any "honey" that has had its pollen removed unless the honey is sold with an accompanying disclosure that it is "filtered or pollen-free." SAC ¶ 15. As a result of Sioux Honey's marketing and labeling of Sue Bee Honey as "honey" even though all pollen has been filtered out, Brod claims that he and other members of the prospective class were either misled into purchasing the product, or were misled about an essential characteristic of the product. *See* SAC ¶ 25 ("Had Plaintiff and members of the Class known the Sue Bee Honey did not comply with California standards – which they would have known had Defendant made the necessary disclosures that the honey was filtered or pollen-free – Plaintiff and members of the Class would not have purchased the Sue Bee Honey."); ¶ 56 (". . . Sue Bee Honey did not conform to the promises or affirmations of fact made by [Sioux Honey] to Plaintiff and members of the Class, in that the product has been economically adulterated through the unnecessary removal of its natural pollen.").[2] Consequently, Plaintiff alleges that he and "Class members suffered economic losses" ranging from the entire purchase price of the Sue Bee Honey to "the value of the Sue Bee Honey had it been fit for its ordinary purposes." SAC ¶¶ 43, 70.

Defendant does not challenge, and, indeed, Plaintiff's complaint seems to satisfy, those elements of standing that require "a causal connection between the injury and the conduct complained of" that is "fairly traceable to the challenged action of the defendant," and the likelihood that Plaintiff's "injury will be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. at 167.

---

[1] Section 29413(e) reads as follows:

> Honey sold as described in subdivision (d) shall not have added to it any food ingredient, including food additives, nor shall any other additions be made other than honey. Honey shall not have any objectionable matter, flavor, aroma, or taint absorbed from foreign matter during its processing and storage. Honey shall not have begun to ferment or effervesce *and no pollen or constituent particular to honey may be removed* except where unavoidable in the removal of foreign inorganic or organic matter.

Cal. Food & Agric. Code § 29413(e) (emphasis added).

[2] Sioux Honey points out that Plaintiff's SAC "does not allege that he expected pollen was in the honey." Def.'s Mot. to Dismiss at 3. Plaintiff doesn't seem to explicitly allege this fact in the SAC, but, as the quoted passages suggest, the Court finds that such an expectation can be reasonably inferred from the allegations put forward in the amended complaint.

United States District Court

For the Northern District of California

1    Rather, Defendant's standing challenge focuses on Plaintiff's ability to demonstrate an "injury-in-

2    fact." *See* Def.'s Mot. to Dismiss at 3 ("Brod does not have the required injury-in-fact standing

3    under Article III of the United States Constitution to assert any claims."  He does not state "how he

4    was injured by [the pollen's] alleged absence from the [Sue Bee] honey.").  Just as this Court found

5    in its previous order granting Defendant's first motion to dismiss, Brod's Second Amended

6    Complaint and allegation of "economic injury" satisfy the injury-in-fact requirement for Article III

7    standing.

8         This Court's order granting Defendant's earlier motion to dismiss analyzed the California

9    Supreme Court's holding in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), in which the

10   Supreme Court found that a plaintiff had standing to bring a suit alleging that "Kwikset falsely

11   marketed and sold locksets labeled as 'Made in U.S.A.' that in fact contained foreign-made parts or

12   involved foreign manufacture," allegedly in violation of state unfair competition and false

13   advertising laws.[3]  *Kwikset Corp.*, 51 Cal. 4th at 317.  The Supreme Court analogized the *Kwikset*

14   plaintiff's complaint to one "based on a fraud theory involving false advertising and

15   misrepresentations to consumers."  *Id*. at 326.  In such cases, "a plaintiff must show that the

16   misrepresentation was an immediate cause of the injury-producing conduct," which meant that the

17   plaintiff in *Kwikset* had to "allege economic injury arising from reliance on Kwikset's

18   misrepresentations" in order to establish standing.  *Id*. at 327.  The Court found that plaintiff's

19   complaint satisfied these requirements because he specifically alleged that "(1) Kwikset labeled

20   certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false,

21   (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4)

22   
_____

23        [3] The *Kwikset* Court explicitly noted that its analysis of injury-in-fact for standing purposes
     followed the meaning ascribed to that term in federal constitutional law.  While the *Kwikset* case

24   was "pending on appeal, the [California] electorate enacted Proposition 64 (Gen. Elec. (Nov. 2,
     2004)), which called into question [plaintiff's] standing to challenge Kwikset's country of origin

25   representations."  *Kwikset*, 51 Cal. 4th at 316.  The text of Proposition 64 expressly adopted the
     established federal meaning of the phrase "injury-in-fact," declaring "[i]t is the intent of the

26   California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair
     competition where they have no client who has been *injured in fact under the standing requirements

27   of the United States Constitution*."  *Id.*, 51 Cal. 4th at 322 (quoting Prop.64, § 1, subd. (e)) (emphasis
     in original).  Absent binding authority to the contrary, the Court once again finds *Kwikset*

28   persuasive.

United States District Court

For the Northern District of California

1  plaintiffs would not have bought the locksets otherwise." *Id*. at 327-28. "Simply stated," the Court

2  reasoned, "labels matter . . . the marketing industry is based on the premise that labels matter, that

3  consumers will choose one product over another similar product based on its label and various

4  tangible and intangible qualities they may come to associate with a particular source." *Id*. at 328.

5  Where, as in *Kwikset*, a customer relies

> on the truth and accuracy of a label and is deceived by
> misrepresentations into making a purchase, the economic harm is the
> same: the consumer has purchased a product that he or she *paid more
> for* than he or she otherwise might have been willing to pay if the
> product had been labeled accurately.  This economic harm – the loss
> of real dollars from a consumer's pocket – is the same whether or not a
> court might objectively view the products as functionally equivalent.

10  *Kwikset*, 51 Cal. 4th at 329 (emphasis in original).  Thus, the Court held that "a consumer who relies

11  on a product label and challenges a misrepresentation contained therein can satisfy the standing

12  requirement . . . by alleging, as plaintiffs have here, that he or she would not have bought the

13  product but for the misrepresentation." *Id*. at 330.

14       As in *Kwikset*, Brod alleges that Sioux Honey labeled its Sue Bee Honey as "honey," that

15  this representation was false as a matter of law under applicable sections of the California Food and

16  Agricultural Code, that consumers saw and relied on the product's label for its truth in purchasing

17  Sioux Honey's "honey," and that Plaintiff and his proposed class members would not have bought

18  the product had they known it did not contain pollen.  Plaintiff's allegations match precisely with the

19  standard laid out by the *Kwikset* Court for establishing injury-in-fact.  This Court held in *Brod* that

20  "under *Kwikset*, California law recognizes an injury when a product is mislabeled in violation of the

21  law and consumers rely on that labeling in purchasing the product or paying more than they

22  otherwise would have.  That injury, defined and established by California law, satisfies the injury-in-

23  fact requirement of Article III." *Brod v. Sioux Honey Ass'n Co-op.*, C-12-1322 EMC, 2012 WL

24  3987516 at *6 (N.D. Cal. Sept. 11, 2012).  Following both *Kwikset* and this Court's order in *Brod*,

25  the Court once again finds that Brod's complaint satisfies the injury-in-fact requirement for standing

26  under Article III.

27

28

3.     Sioux Honey's Objections

As it did in its prior motion to dismiss, Sioux Honey cites to a number of "benefit of the bargain" cases in support of its argument that Plaintiff lacks Article III standing to sue, including *Rivera v. Wyeth-Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002).  In *Rivera*, the Fifth Circuit found that a group of plaintiffs lacked standing to sue Wyeth for its role in distributing Duract, a non-steroidal anti-inflammatory drug prescribed for short-term management of acute pain, because they could demonstrate no concrete injury flowing from their use of the drug.  Plaintiffs had sued Wyeth on the theory that it had failed to adequately warn of the drug's dangers in violation of the Texas Deceptive Trade Practices Act, the implied warranty of merchantability, and common law unjust enrichment.  *Rivera*, 283 F.3d at 317.  The *Rivera* court found that "[b]y plaintiffs' own admission, Rivera paid for an effective pain killer, and she received just that – the benefit of her bargain."  *Id.* at 320.  Despite plaintiffs' claims to the contrary, "[h]ad Wyeth provided additional warnings or made Duract safer, the plaintiffs would be in the same position they occupy now," and as such "they cannot have a legally protected contract interest."  *Id.*  Defendant also cites in support of its argument the following: *Medley v. Johnson & Johnson,* 2011 WL 159674, at *2 (D.N.J. Jan.18, 2011) (finding that plaintiffs lacked standing where the economic injury for which they sought redress was the price they paid for shampoo and no adverse health consequences were pled), *Young v. Johnson & Johnson*, 2012 WL 1372286 (D.N.J. Apr. 19, 2012) (finding that plaintiff's complaint amounts to no more than subjective allegations that the presence of any amount of trans fat and partially hydrogenated oils renders Defendant's product unhealthy, and, as such, is insufficient to establish injury-in-fact), *Boysen v. Walgreen Co.*, C 11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) (finding that plaintiff's complaint regarding defendant's alleged failure to disclose the presence of "material and significant" levels of arsenic and lead in its "100% Apple Juice" and "100% Grape Juice" did not satisfy injury-in-fact standing requirements), and *Koronthaly v. L'Oreal USA, Inc*., 374 Fed. Appx. 257 (3rd Cir. 2010) (finding no standing to assert claims related to the presence of lead in lipstick at an amount exceeding that permitted in candy under federal law).

United States District Court

For the Northern District of California

1    These cases are insufficient to render *Kwikset* inapposite.  With the exception of *Rivera*, each

2  of these cases addresses an alleged failure to disclose the *presence* of a substance that made a

3  product indiscernibly dissimilar from what a consumer thought they were purchasing.  Brod's

4  complaint, in contrast, alleges that Sioux Honey failed to disclose the *absence* of a substance whose

5  removal allegedly "economically adulterated" the product such that "[i]f Plaintiff and the members

6  of the Class had known the true facts, they would not have purchased the Sue Bee Honey or paid as

7  much as they did for the Sue Bee Honey."  SAC ¶¶ 56, 59.  In *Guerrero v. Target Corp.*, 12-21115-

8  CIV, 2012 WL 3812324 (S.D. Fla. Sept. 4, 2012), a Florida District Court drew a similar distinction

9  in an analogous honey labeling case.  That Court distinguished *Medley v. Johnson & Johnson*

10  *Consumer Cos.*, 2011 WL 159674, and rejected defendant's argument that plaintiff lacked standing,

11  noting "[i]n the present case, the issue is not whether the honey Plaintiff purchased contained an

12  unsafe substance, but rather that the honey lacked an ingredient, pollen, that Plaintiff contends is an

13  essential element of honey under Florida law."  *Id.*, 2012 WL 3812324 at *3.  Unlike *Medley*,

14  *Boysen v. Walgreen Co.*, 2012 WL 2953069, and *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. Appx.

15  257, the plaintiff in *Guerrero* "alleged that the honey she purchased did not contain the health

16  benefits of pollen that she expected, was less valuable than honey that contained pollen and that she

17  would not have purchased the honey if she knew it did not contain pollen," and thus "contends that

18  the product she purchased was not what she expected."  *Id.* at *3 and n.4.  Under those

19  circumstances, the *Guerrero* court held that "Plaintiff has adequately plead an injury in fact."  *Id.* at

20  *3.

21    *Rivera*, a Fifth Circuit decision that is not binding on this Court, is likewise distinguishable.

22  Where, as here, the absence of a putatively valuable component is alleged to affect consumer

23  acceptance and the price consumers are willing to pay, there is injury-in-fact sufficient to confer

24  Article III standing.  In contrast, in *Rivera*, the court found that plaintiffs received a product that

25  performed the medical benefits they expected, and thus there was no allegation that consumers paid

26  more for the product than they otherwise would have had the warning been disclosed.  *See Rivera v.*

27  *Wyeth-Ayerst Laboratories*, 283 F.3d at 320 ("Duract worked.  Had Wyeth provided additional

28  warnings or made Duract safer, the plaintiffs would be in the same position they occupy now.

United States District Court

For the Northern District of California

1  Accordingly, they cannot have a legally protected contract interest.").  This distinction places Brod

2  in a different position from the plaintiff in Rivera, who, by her "own admission, paid for an effective

3  pain killer, and she received just that-the benefit of her bargain."  *Rivera*, 283 F.3d at 320.  Brod, in

4  contrast, claims he did *not* obtain the benefit of the expected bargain.

5       Finally, Sioux Honey asserts that Brod's SAC ought to be dismissed in light of this Court's

6  earlier order granting Defendant's motion to dismiss because "[Sioux Honey] properly labeled its

7  honey as honey and therefore there was no misrepresentation under federal law and the contrary

8  California law was preempted."  Def.'s Mot. to Dismiss at 4.  Defendant apparently argues that

9  because Brod cannot prove his case in chief, neither can he show that he suffered an injury-in-fact,

10  and therefore lacks standing under Article III.  Sioux Honey's argument misconstrues the scope of

11  assessing constitutional standing, conflating it with the merits of the legal claims asserted.

12       For the purpose of evaluating Brod's standing to sue, it is enough that he alleges Sioux

13  Honey had a duty to label Sue Bee Honey in a way that discloses the removal of pollen to potential

14  consumers.  Whether or not his claim properly construes controlling state law to demonstrate the

15  existence of that duty will be examined *infra*, not here.  *See Flast v. Cohen*, 392 U.S. 83, 99 (1968)

16  ("The fundamental aspect of standing is that it focuses on the party seeking to get his complaint

17  before a federal court and not on the issues he wishes to have adjudicated.  The 'gist of the question

18  of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of

19  the controversy as to assure that concrete adverseness which sharpens the presentation of issues

20  upon which the court so largely depends for illumination of difficult constitutional questions.'")

21  (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  Whether or not Brod's complaint properly

22  construes California's Food & Agricultural Code, and whether or not Sioux Honey's alleged

23  conduct violated those provisions, are not part of an inquiry into Plaintiff's Article III standing.  *See*

24  *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990) ("It is well established, however, that *before a*

25  *federal court can consider the merits of a legal claim*, the person seeking to invoke the jurisdiction

26  of the court must establish the requisite standing to sue.") (emphasis added); *see also Warth v.*

27  *Seldin*, 422 U.S. 490, 500 (1975) (a court's threshold inquiry into "standing in no way depends on

28

1   the merits of the plaintiff's contention that particular conduct is illegal").  Thus, the Court rejects

2   Sioux Honey's invitation to dismiss Brod's complaint on standing grounds.

3   B.   Federal Labeling Requirements

4        Sioux Honey's motion to dismiss next challenges Plaintiff's interpretation of California's

5   Food and Agricultural Code, and its alleged disclosure requirement relating to the removal of pollen;

6   the motion frames the argument in light of federal labeling laws.  Defendant argues that because

7   Sioux Honey complied with applicable federal law, Plaintiff's state law causes of action premised on

8   the non-disclosure of the removal of pollen from Sue Bee Honey are necessarily preempted.  This

9   aspect of the Defendant's motion is brought pursuant to Fed. R. Civ. P. 12(b)(6).[4]  The Court finds

10  that Defendant's construction of federal labeling requirements is too broad, and that Plaintiff's

11  claims ought not be dismissed on the basis of federal preemption.

12       1.   Legal Standard

13       Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead a claim with enough

14  specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

15  rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson,* 355 U.S.

16  41, 47 (1957)).  Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss based on the failure to

17  state a claim upon which relief may be granted.  A motion to dismiss based on Rule 12(b)(6)

18  challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d

19  1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of

20  material fact as true and construe them in the light most favorable to the nonmoving party, although

21  "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6)

---

[4]  The Court notes the observation of its sister court in the Eastern District of Wisconsin that, although "Sioux Honey moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)," the doctrine of federal preemption "is an affirmative defense, so the 'more appropriate motion would have been one under Rule 12(c)' for judgment on the pleadings because 'plaintiffs have no duty to anticipate affirmative defenses.'"  *Regan v. Sioux Honey Ass'n Co-op.*, 12-C-758, 2013 WL 395127 at *1 (E.D. Wis. Jan. 31, 2013) (quoting *S.C. Johnson & Son, Inc. v. Transport Corp. of Am., Inc.*, 697 F.3d 544, 547 (7th Cir.2012)).  As "no one has made anything of this point," this Court, like the Seventh Circuit in *S.C. Johnson*, "will let it pass."  *S.C. Johnson & Son, Inc.*, 697 F.3d at 547.  Regardless, the Court finds that "the same standard applies to motions made under either Rule 12(b) or Rule 12(c), such that any distinction between them is merely semantic."  *Douglass v. Dist. of Columbia*, 605 F. Supp. 2d 156, 161 (D.D.C. 2009) (citations and internal quotation marks omitted).

United States District Court

For the Northern District of California

1   dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not

2   contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is

3   plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content

4   that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5   alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550

6   U.S. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

7   more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

8         2.      Federal Food, Drug, and Cosmetic Act

9         The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et. seq.*, establishes

10  national uniform food labeling requirements, including those governing the labeling of honey.

11  Congress amended the FDCA in 1990 by enacting the Nutrition Labeling and Education Act

12  ("NLEA"), whose stated purpose was, among other things, to "clarify and to strengthen [the FDA's]

13  authority to require nutrition labeling on foods." *National Council for Improved Health v. Shalala*,

14  122 F.3d 878, 880 (10th Cir. 1997) (quoting H.R. Rep. No. 101-538, at 7 (1990), reprinted in 1990

15  U.S.C.C.A.N. 3336, 3337)).  As part of the NLEA, Congress added a provision to the FDCA that

16  expressly preempts state laws addressing certain covered subjects, including food labeling

17  requirements.  *See* 21 U.S.C. § 343-1(a).  That section provides in relevant part as follows:

18              [N]o State or political subdivision of a State may directly or indirectly
                establish under any authority or continue in effect as to any food in
19              interstate commerce –

20              . . .

21              (3)     any requirement for the labeling of food of the type required by
                        section . . . 343(i) . . . that is not identical to the requirement of
22                      such section.

23  21 U.S.C. § 343-1(a)(3).

24        Section 343(g) of the FDCA provides that where federal law has prescribed a "standard of

25  identity" to a food, the label affixed to that food must "bear[] the name of the food specified in the

26  definition and standard, and, insofar as may be required by other regulations, the common names of

27  optional ingredients . . ." 21 U.S.C. § 343(g).  Neither party asserts that honey is "a food for which a

28  definition and standard of identity has been prescribed by regulations."  21 U.S.C. § 343(g).  *See e.g.*

United States District Court

For the Northern District of California

1  Def.'s Mot. to Dismiss at 7.  Where no "standard of identity" exists, § 343(i) of the FDCA declares a

2  food misbranded "[u]nless its label bears (1) the common or usual name of the food, if any there be,

3  and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such

4  ingredient . . ."  21 U.S.C. § 343(i).

5       This Court held in *Brod v. Sioux Honey Ass'n Co-op.*, 2012 WL 3987516 at *8-9, that,

6  despite the removal of all pollen, Sue Bee Honey's common or usual name was and is "honey."[5]

7  Sioux Honey attempts to transform this Court's ruling in *Brod* into one that, on the basis of federal

8  preemption, restricts California from imposing a disclosure requirement of the type contemplated by

9  the Plaintiff.  Defendant's effort is misguided.

10      "Congress has the power to preempt state law" by operation of the Supremacy Clause in

11 Article VI of the U.S. Constitution.  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372

12 (2000).  "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts

13 state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative

14 field to such an extent that it is reasonable to conclude that Congress left no room for state

15 regulation in that field."  *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citations omitted).

16 Of these three types of federal preemption, the first best characterizes the operation of § 343-1(a),

17 which, through §313(i), expressly preempts any state law requiring a food to be labeled with

18 something other than its common or ususal name.  *See Reid v. Johnson & Johnson*, 11CV1310 L

19 BLM, 2012 WL 4108114 at *5 (S.D. Cal. Sept. 18, 2012) ("This provision [§ 343-1(a)] expressly

20 preempts state laws addressing certain subjects that are 'not identical to' various standards set forth

21 by the FDCA.").  Thus, as this Court concluded in *Brod*, any California law that requires honey

22

23 _____

      [5]  In *Brod*, this Court concluded that the "common or usual name" of Sue Bee Honey was

24 "honey," and that §343(i) of the FDCA required it to be labeled as such.  *Brod v. Sioux Honey Ass'n
   Co-op.*, 2012 WL 3987516 at *8.  In reaching this conclusion, the Court noted that Sue Bee Honey

25 met "the typical definition of honey found in dictionaries," despite the fact that it contained no
   pollen.  *Id.*  This Court also considered a number of statutory definitions of honey compiled from

26 "states throughout this nation," and found that "[n]one of these definitions require that honey contain
   non-filtered pollen."  *Id.*  Further, the Court took judicial notice of prior U.S. Department of

27 Agriculture regulations that established varying grades of honey, and found that those regulations
   supported a finding that "the common or usual name for Sue Bee Clover Honey is 'honey.'"  *Id*; *see*

28 U.S. Department of Agriculture "United States Standards for Grades of Extracted Honey," 16 Fed.
   Reg. 2463 (March 16, 1951).

United States District Court

For the Northern District of California

merchants to label honey that has been filtered of all pollen as anything but "honey" is preempted

under the FDCA.  *See Brod v. Sioux Honey Ass'n Co-op.*, 2012 WL 3987516 at *10.

This, however, does not mean that California could not impose a separate disclosure

requirement of the type suggested by Plaintiff.  This Court noted in *Brod* that:

> its finding of preemption does not imply that California is powerless to
> act in this arena.  For instance, if California required disclosure on its
> labels that the honey was e.g., "filtered" or "pollen free," that would
> appear not to conflict expressly with § 343(i).  California simply
> cannot under § 343(i) ban the use of the label "honey" for products
> which are commonly and usually called honey.

*Id.* at *9.  Importantly, § 343-1(a) contains an express savings clause stating that it "shall not be

construed to preempt any provision of State law, unless such provision is *expressly preempted* under

[21 U.S.C. § 343–1(a) ]."  Pub. L. No. 101–535, § 6(c)(1) (not codified; *see* 21 U.S.C. § 343–1

Historical and Statutory Notes) (emphasis added).  The Supreme Court has held that "an express

definition of the pre-emptive reach of a statute 'implies'-*i.e.,* supports a reasonable inference-that

Congress did not intend to pre-empt other matters."  *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288

(1995).  The savings clause herein makes that explicit.  Consequently, "the only State requirements

that are subject to preemption [under § 343-1(a)] are those that are affirmatively different from the

Federal requirements."  *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 372 (N.D. Cal.

2010) (citing *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527,

532 (S.D.N.Y. 2008)).  Other than § 343(i)'s "common or usual name" provision, Defendant has not

cited to any other section incorporated by § 343–1(a) that would expressly preempt Plaintiff's

interpretation of California's Food and Agricultural Code, and its alleged disclosure requirement

relating to the removal of pollen.

Indeed, such an expansive reading of the preemptive reach of § 343-1(a) is unwarranted.

"Health and safety issues have traditionally fallen within the province of state regulation.  This is

true of the regulation of food and beverage labeling and branding."  *Holk v. Snapple Beverage

Corp.*, 575 F.3d 329, 334 (3d Cir. 2009).  In such areas of traditional state regulation, "a

presumption against preemption" exists.  *Id.* (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504,

516 (1992)); *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) ("In areas of

United States District Court

For the Northern District of California

1    traditional state regulation, we assume that a federal statute has not supplanted state law unless

2    Congress has made such an intention clear and manifest."). Furthermore, in discerning the proper

3    scope of an express preemption provision, courts "focus on the plain wording of the clause, which

4    necessarily contains the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v.*

5    *Easterwood*, 507 U.S. 658, 664 (1993).

6         The Court finds that, were California to impose a requirement mandating that manufacturers

7    disclose when pollen has been removed from honey, such a requirement would not be "affirmatively

8    different" from the FDCA's "common or usual name" requirement so as to subject it to preemption

9    under § 343-1(a). *See Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. at 372. A disclosure

10   requirement of this type would not force manufacturers to call "honey" something other than

11   "honey." Rather, it would require merchants like Sioux Honey to *supplement* their product's label

12   with additional information that is not part of the product's name.

13        "In the interest of avoiding unintended encroachment on the authority of the States . . . a

14   court interpreting a federal statute pertaining to a subject traditionally governed by state law will be

15   reluctant to find pre-emption," and "pre-emption will not lie unless it is 'the clear and manifest

16   purpose of Congress.'" *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663-64 (1993). Defendant

17   has not shown that Congress intended for § 343(i), through § 343-1(a), to preempt such

18   supplemental disclosure requirements.[6] *Cf Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D.

19   365 (No finding of preemption under the FDCA where evidence did not clearly indicate Congress'

20   intent to prohibit beverage companies from changing geographic origin labels to comport with state

21   law).

22   C.   California Disclosure Requirement

23        Brod's four state law causes of action against Sioux Honey rest in large part on an alleged

24   disclosure requirement contained in California's Food and Agricultural Code. Plaintiff contends that

25

26        [6] The Court respectfully disagrees with the contrary conclusion reached in *Regan v. Sioux
     Honey Ass'n Co-op.*, 2013 WL 395127 at *4 n.5. As stated above, a California state law that
27   requires honey merchants to disclose the removal of all pollen from products whose common or
     usual name was "honey" would not expressly conflict with the FDCA's "common or usual name"
28   provision (§ 343(i)), and, thus, would not fall within the scope of the FDCA's explicit preemption
     provision (§ 343-1(a)).

1   Cal. Food & Agric. Code § 29413(e) requires merchants who filter out all naturally-occurring pollen

2   from products sold as "honey" to disclose to consumers that such honey "is pollen-free or filtered."

3   SAC ¶ 21; *see also id.* ¶¶ 41, 49, 51, 56, 63 (identifying the failure to disclose the absence of pollen

4   allegedly required under California law as underlying each cause of action).  In the SAC, Brod

5   states:

6           Pursuant to Cal. Food & Agric. Code § 29413(e), once pollen is
            removed from honey (except where unavoidable in the removal of
7           foreign inorganic or organic matter) the condiment, under the
            California Food & Agriculture Code, is no longer salable in the state
8           as "honey" *without disclosures that it is filtered or pollen-free*.

9   SAC ¶ 15 (emphasis added).  Plaintiff also cites § 29673, which makes it "unlawful for any person

10  to mislabel any container or subcontainer of honey or place any false or misleading statement on any

11  wrapper, label, or lining of any container of honey."  He further cites § 29416, which specifies that

12  "[a] statement, design, or device is false and misleading, if the honey to which it apparently or

13  actually refers does not conform in every respect to such statement."  Plaintiff contends these three

14  provisions create a requirement that honey lacking any naturally-occurring pollen "cannot be sold in

15  the State of California simply as 'honey,' without an accompanying disclosure that it is filtered or

16  pollen-free."  SAC ¶ 23.

17          Sioux Honey disputes Brod's construction of California law.  Defendant argues that "[t]here

18  is no California requirement to disclose the filtered nature of honey and plaintiff's assertion that Cal.

19  Ag. Code § [29413(e)] is such a requirement misrepresents what the statute actually says."  Def.'s

20  Reply Br. (Docket No. 64) at 2.  According to Defendant, Brod's claim "misinterprets [this]

21  California law which does not require a disclosure concerning pollen content, but rather attempts to

22  ban the use of the label 'honey' for products which are commonly or usually called honey."  *Id.* at 3.

23  "The best that plaintiff can do," according to Sioux Honey, "is assert that California could possibly

24  adopt a labeling law requiring that pollen content be disclosed, but there presently is no such law."

25  *Id.* at 2.

26          "The task of resolving the dispute over the meaning of [a statute] begins where all such

27  inquiries must begin: with the language of the statute itself."  *United States v. Ron Pair Enterprises,*

28  *Inc.*, 489 U.S. 235, 241 (1989) (citing *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685 (1985)).

The California Food and Agricultural Code defines "honey" as "the natural sweet substance produced by honeybees from the nectar of plants or from secretions of living parts of plants or excretions of plant sucking insects on the living parts of plants, which the bees collect, transform by combining with specific substances of their own, deposit, dehydrate, store, and leave in the honeycomb to ripen and mature." Cal. Food & Agric. Code § 29413(a). As noted above, § 29413(e) of the Food and Agricultural Code provides the following:

> Honey sold as described in subdivision (d) shall not have added to it any food ingredient, including food additives, nor shall any other additions be made other than honey. Honey shall not have any objectionable matter, flavor, aroma, or taint absorbed from foreign matter during its processing and storage. Honey shall not have begun to ferment or effervesce *and no pollen or constituent particular to honey may be removed* except where unavoidable in the removal of foreign inorganic or organic matter.

Cal. Food & Agric. Code § 29413(e) (emphasis added). Section 29671, in turn, states "[i]t is unlawful for any person to . . . sell any honey, adulterated honey or any product which is marked, labeled, or designated as honey, *which does not conform to the provisions of this chapter*." Cal. Food & Agric. Code § 29671 (emphasis added). Additionally, § 29673 makes it "unlawful for any person to *mislabel* any container or subcontainer of honey or place any false or misleading statement on any wrapper, label, or lining of any container of honey, or on any placard which is used in connection with or which has reference to any honey." Cal. Food & Agric. Code § 29673 (emphasis added).

As this Court held in its order granting Defendant's first motion to dismiss, these provisions of state law, by their terms, require that any product labeled as honey *must* contain pollen to be *lawfully sold* in California. *Brod v. Sioux Honey*, 2012 WL 3987516 at *9-10. They do not, as Plaintiff suggests, allow Sioux Honey to lawfully sell honey which has had all pollen removed on the condition that Defendant include "a notation which discloses this fact." SAC ¶ 5. Prohibiting the sale of certain honey is one thing. Requiring disclosure is another. Indeed, even if Defendant had included the disclosure Plaintiff seeks, it would still be in violation of § 29413(e).

Plaintiff has cited no law clearly mandating the purported disclosure (as opposed to banning its sale). Indeed, the recent opinion in *Strobridge v. Safeway, Inc.*, No. RG12-611078 (appended to

United States District Court

For the Northern District of California

1   Defendant's Request for Judicial Notice (Docket No. 64-1) as Ex. 1) serves as confirmation that

2   California has yet to enact such a disclosure requirement.  In *Strobridge*, Judge Brick of the

3   Alameda County Superior Court sustained defendant Safeway's demur to plaintiff Strobridge's

4   complaint alleging similar "misbranding" claims related to the sale of non-pollinated honey.  Judge

5   Brick found that the same provisions of the Food and Agricultural Code cited by Brod in this matter

6   "do not require a manufacturer to indicate the absence of pollen (not unavoidably removed) on the

7   labels of honey sold in California; nor do they render such a failure 'mislabeling' or 'misbranding.'"

8   *Strobridge v. Safeway, Inc.*, No. RG12-611078 at 3:18-20.

9          Further, several provisions of the Food and Agricultural Code pertaining to honey explicitly

10  state when merchants are required to make disclosures about the honey they sell.  Since at least

11  1967, California has imposed a labeling requirement on honey merchants to disclose when honey

12  sold in the state has been imported from a foreign country.  *See* Cal. Food & Agric. Code § 29643

13  ("Every container and subcontainer of imported honey shall be labeled with the name of the territory

14  or foreign country from which it is imported . . .").  Similarly, California law directs honey

15  merchants to "conspicuously mark" each container of honey with "[o]ne of the United States grades

16  which are established for honey by the United States Department of Agriculture."  Cal. Food &

17  Agric. Code § 29611(c).  Indeed, the very same section of the Food and Agricultural Code requires

18  merchants to disclose the *addition* of pollen.  *See id.* § 29611(c) ("This subdivision does not,

19  however, apply to honey to which pollen has been added, if the amount of pollen added is visible

20  and each such container is plainly and conspicuously labeled with the words 'pollen added.'").

21  Thus, when the California legislature desired to impose a labeling requirement, it knew how to do

22  so; it did it explicitly.

23         Plaintiff's argument that § 29413(e) *implicitly* requires merchants to disclose the removal of

24  pollen from honey is neither supported by the text of statute, nor is it in harmony with the many

25  *explicit* disclosure requirements found in California's statutory scheme addressing honey production,

26  manufacture, and sale.  The fact that Plaintiff cannot cite a provision of the Food and Agricultural

27  Code, or any other provision of California law, that states in similarly direct terms that a merchant

28  must disclose to consumers when pollen has been removed from honey strongly implies that no such

United States District Court

For the Northern District of California

1   requirement exists.  In cases "where, as here, the statute's language is plain, 'the sole function of the

2   courts is to enforce it according to its terms.'"  *United States v. Ron Pair Enterprises, Inc.*, 489 U.S.

3   at 241 (quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)).  The plain language of §

4   29413(e) prohibits the sale of honey that has been filtered of all pollen.  It does not impose a

5   disclosure requirement.

6   D.   Failure to Disclose

7        Plaintiff's complaint alternately alleges that Sioux Honey violated the CLRA, UCL, and

8   breached an implied warranty of merchantability by misleading California consumers into

9   purchasing Sue Bee Honey despite the fact that it was "filtered or pollen-free."  SAC ¶ 23.  Brod

10  alleges that "[h]ad Plaintiff and members of the Class known the Sue Bee Honey did not comply

11  with California standards – which they would have known had Defendant made the necessary

12  disclosures that the honey was filtered or pollen free – Plaintiff and members of the Class would not

13  have purchased the Sue Bee Honey."  *Id.* ¶ 25.  As established *supra*, Plaintiff has not shown that

14  Sue Bee Honey failed to comply with "California standards" insofar as that phrase refers to

15  Plaintiff's impermissible construction of Cal. Food and Agric. Code § 29413(e).

16       However, § 29673 of the Food and Agricultural Code independently makes it "unlawful for

17  any person to mislabel any container or subcontainer of honey or place any *false or misleading*

18  *statement* on any wrapper, label, or lining of any container of honey."  Cal. Food & Agric. Code §

19  29673 (emphasis added).  Plaintiff alleges that Defendant's failure to disclose the pollen content of

20  Sue Bee Honey rendered its labeling false or misleading by misrepresenting the quality,

21  characteristics, and/or ingredients of the product, in violation of the CLRA, UCL, and an implied

22  warranty of merchantability.  *See* SAC ¶¶ 39-40 (CLRA); 49-50 (UCL); 63, 68 (implied warranty).

23  As such, Plaintiff's three causes of action are arguably cognizable independent of any alleged failure

24  to comply with § 29413(e).

25       Sioux Honey argues, nonetheless, that Plaintiff's CLRA, UCL, and implied warranty claims

26  ought to be dismissed for failing to state a viable claim under Rule 12(b)(6).  Defendant argues,

27  among other things, that Brod's understanding of Defendant's allegedly false representations would

28  not be shared by a "reasonable consumer," and that Plaintiff has not plausibly shown that the

20

United States District Court

For the Northern District of California

1   absence of pollen from Sue Bee Honey materially affects consumer acceptance and pricing of the

2   product.  Def.'s Mot. to Dismiss at 9-10, 17-18.

3          1.      Misrepresentation Under the CLRA and UCL

4          The CLRA makes unlawful the act of "[r]epresenting that goods or services are of a

5   particular standard, quality, or grade, or that goods are of a particular style or model, if they are of

6   another," Cal. Civ. Code § 1770(a)(7), as well as "[r]epresenting that goods or services have

7   sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

8   have."  *Id*. §1770(a)(5).  The UCL prohibits any "unlawful, unfair[,] or fraudulent business act or

9   practice," including engaging in "unfair, deceptive, untrue or misleading advertising."  Cal. Bus. &

10  Prof. Code § 17200.  Under the UCL, "unfair" business practices exist when (1) the harm to the

11  consumer outweighs the utility of a practice to the defendant, or (2) when a business practice

12  violates public policy as declared by "specific constitutional statutory or regulatory provisions."

13  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205 (9th Cir. 2010) (citing *Lozano v. AT & T Wireless*

14  *Servs., Inc*., 504 F.3d 718, 735 (9th Cir. 2007) and *Gregory v. Albertson's, Inc*., 104 Cal. App. 4th

15  845, 854 (2002)).  The "unfair" prong of the UCL prohibits "not only advertising which is false, but

16  also advertising which [,] although true, is either actually misleading or which has a capacity,

17  likelihood or tendency to deceive or confuse the public."  *Williams v. Gerber Products Co.*, 552 F.3d

18  934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc*., 27 Cal. 4th 939, 951 (2002)).  *See also Kasky*

19  *v. Nike, Inc.*, 27 Cal. 4th at 951 ("Thus, to state a claim under either the UCL or the false advertising

20  law, based on false advertising or promotional practices, it is necessary only to show that members

21  of the public are likely to be deceived.") (internal quotation marks omitted).

22          To state a valid claim under the UCL and CLRA on a misrepresentation theory, a plaintiff

23  must show that a "reasonable consumer" is "likely to be deceived" by the allegedly misleading

24  statement.  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quotations and citations

25  omitted).  *See also Williams v. Gerber Products Co.*, 552 F.3d at 938 ("these California statutes are

26  governed by the 'reasonable consumer' test"); *McKinniss v. Sunny Delight Beverages Co.*,

27  CV0702034-RGKJCX, 2007 WL 4766525 at *2 (C.D. Cal. Sept. 4, 2007) (that a plaintiff must

28  "show that a reasonable consumer would be misled" by a misrepresentation or omission is a

"threshold question under any UCL, [False Advertising Law], or CLRA claim."). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the reasonable consumer standard adopts the perspective of the "ordinary consumer acting reasonably under the circumstances." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th at 512. The reasonable consumer need not be "exceptionally acute and sophisticated." *Donaldson v. Read Magazine*, 333 U.S. 178, 189 (1948); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th at 509 (same). To the contrary, questions of judgment calling for the perspective of a reasonable consumer are "determined in the light of the effect [such a question] would most probably produce on ordinary minds." *Donaldson v. Read Magazine*, 333 U.S. at 189.

Plaintiff has not pled sufficient facts to plausibly show that the reasonable consumer would be misled into believing that Sue Bee Honey contained pollen. The SAC alleges that "members of the California public are likely to be deceived by Defendant's marketing of the Sue Bee Honey because Sue Bee Honey omits to disclose that it has had its natural pollen unnecessarily removed through notation that it is filtered or pollen free." SAC ¶ 50. However, Plaintiff fails to plead any facts establishing a reasonable consumer would likely be so deceived. Indeed, Brod does not cite a single source to support his legal theory that "members of the public would likely be deceived" by Sioux Honey's omission. *See* Pl.'s Opp. Br. at 10. It is certainly possible that a particularly sophisticated consumer might consider pollen to be a valuable component of honey, such that the non-disclosure of its removal from Sue Bee Honey would likely result in deception to him or her. This, however, does not establish that the *reasonable* consumer would expect honey to contain pollen. Plaintiff's complaint is silent on this point with the exception of certain threadbare conclusory recitals that "Plaintiff and members of the Class would not have purchased the Sue Bee Honey" had they known that it was "filtered or pollen-free." *See e.g.* SAC ¶ 25. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," however, "do not suffice" to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. at 678. No such plausible claim about the expectation of a reasonable consumer is stated here.

United States District Court

For the Northern District of California

1    Indeed, this Court has previously catalogued a number of state statutes and dictionary

2   definitions of "honey," and noted that *none* identify pollen as a necessary or even notable

3   constituent.  *See Brod v. Sioux Honey Ass'n Co-op*., 2012 WL 3987516 at *11-12.  California's own

4   statutory definition of honey omits any reference to pollen, and has done so since at least 1967.  *See*

5   Cal. Food & Agric. Code § 29413(a).[7]  As noted above, California's honey statutes specifically

6   require merchants to disclose when pollen is *added* to honey.  *See* Cal. Food & Agric. Code §

7   29611(c).  There is no parallel labeling provision regulating the *removal* of pollen.  Moreover, the

8   fact that the Department of Agriculture's "United States Standards for Grades of Extracted Honey"

9   assigned "Grade A" to honey characterized by its "freedom from air bubbles, *pollen grains*, or fine

10   particles of any material which might be suspended in the product" for much of the latter twentieth

11   century, combined with the statutory and dictionary definitions of honey referenced above, strongly

12   suggest that pollen has not traditionally been considered a constituting element of honey such that its

13   undisclosed removal would likely be considered deceptive by the reasonable consumer.  *See* 16 Fed.

14   Reg. 2465-66 (emphasis added).

15    Nor is there any merit to Plaintiff's contention that the reasonable consumer would be

16   deceived by Sioux Honey's failure to disclose that its labeling of Sue Bee Honey does not comply

17   with Cal. Food and Agric. Code § 29413(e).  At the hearing on Defendant's motion, Plaintiff's

18   counsel described the "crux" of his client's "likely-to-be-deceived claim in [the] second amended

19   complaint" as follows:

20        We are alleging that the reasonable consumer expects if there is a law
          governing their foodstuffs that they go to buy, that that law has been
21        complied with.  And if it's not complied with, it should be disclosed.

22   _____

23        [7]  Prior to its amendment in 2009, California's statutory definition of "honey" was as
     follows:

24        "Honey" means the nectar of floral exudations of plants gathered and
25        stored in the comb by honeybees.  It is a levorotatory, contains not
          more than 20 percent of water, not more than 25 one hundredths of 1
26        percent of ash, not more than 8 percent of sucrose, its specific gravity
          is not less than 1.412, its weight not less than 11 pounds, 12 ounces
27        per standard gallon of 231 cubic inches at 68 degrees Fahrenheit.

28   Cal. Food & Agric. Code § 29413 (amended by Stats. 2009, c. 388 (A.B.1216), § 1).  Neither this
     definition, nor the amended definition now in force, make any reference to pollen.

United States District Court

For the Northern District of California

1  Transcript of Proceedings (Docket No. 71) at 3:12-13; 6:6-9.  However, as discussed *supra*,

2  California's honey labeling requirement is preempted by the FDCA.  Section 29413(e) is without

3  force or effect to the extent that it purports to ban Sue Bee from labeling its honey as "honey."

4     Furthermore, even if one could construct a theoretical bases for finding reasonable consumer

5  expectation based on constructed notice of § 29413(e), such a consumer would likewise have

6  constructed notice that the Sue Bee Honey label states it is "Grade A" which, as noted above, means

7  under federal standards that the honey is *free* of pollen grains.  In short, if the tool of constructed

8  notice is used to inform consumer expectations, removal of pollen from Sue Bee Honey was in fact

9  effectively disclosed on its label.

10     The Ninth Circuit has recognized that "whether a business practice is deceptive will usually

11  be a question of fact not appropriate for decision on demurrer."  *Williams v. Gerber Products Co.*,

12  552 F.3d 934, 938.  Although "[d]ecisions granting motions to dismiss claims under the [UCL] have

13  occasionally been upheld" where a plaintiff fails to advance a plausible claim that a reasonable

14  consumer was likely to be misled by a particular statement or advertisement, the Ninth Circuit has

15  stated nonetheless that it is the "rare situation in which granting a motion to dismiss is appropriate."

16  *Id*. at 939; *Cf. Werbel ex rel. v. Pepsico, Inc.*, C 09-04456 SBA, 2010 WL 2673860 at *3 (N.D. Cal.

17  July 2, 2010) ("where a court can conclude *as a matter of law* that members of the public are not

18  likely to be deceived by the product packaging, dismissal is appropriate") (emphasis added).

19     The Court finds that this case is one such "rare situation."  The claims put forward by Brod

20  stand in sharp contrast to those advanced in the Ninth Circuit's *Williams* decision, in which the court

21  reversed dismissal of false advertising claims at the pleading stage.  *See Williams v. Gerber*

22  *Products Co.*, 552 F.3d at 936 (finding that Gerber's "use of the words 'Fruit Juice' juxtaposed

23  alongside images of fruits such as oranges, peaches, strawberries, and cherries" on its packaging for

24  "Gerber's Fruit Juice Snacks" could lead a reasonable consumer to believe that the product

25  contained the juices of the fruit depicted).  Here, Plaintiff has failed to allege any facts to support his

26  contention that the lack of a disclaimer on Sue Bee Honey regarding its non-pollinated state would

27  deceive the reasonable consumer.  Further, as a matter of law, Plaintiff cannot state that Defendant

28  failed to comply with Cal. Food and Agric. Code § 29413(e).  Thus, he cannot advance a derivative

United States District Court

For the Northern District of California

1 claim based on Defendant's failure to denote such "non-compliance" on Sue Bee Honey's label.

2 Plaintiff's CLRA and UCL causes of action fail to state a claim upon which relief can be granted,

3 and must therefore be dismissed under Rule 12(b)(6).

4      2.   Materiality Under the CLRA and UCL

5      Plaintiff's CLRA and UCL claims also fail because Brod has not demonstrated that the

6 absence of pollen from Sue Bee Honey is material to the reasonable or average consumer.  In order

7 to establish liability under these statutes, the omission or affirmative misrepresentation contained

8 within an allegedly misleading statement must be "material" to a customer's evaluation of a product.

9 *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (2009) ("It is not necessary that the plaintiff's

10 reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or

11 decisive factor influencing his conduct.  It is enough that the representation has played a substantial

12 part, and so had been a substantial factor, in influencing his decision.") (internal quotation marks

13 and citations omitted); *see In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010)

14 (finding potential CLRA liability where "a reasonable person would find it important when

15 determining whether to purchase a product that it is unlawful to sell or possess that product.").

16 *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1201 n.2 (9th Cir. 2001) (materiality is a required

17 element of fraud claims based on affirmative misrepresentation and omission).  "A

18 misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its

19 existence or nonexistence in determining his choice of action in the transaction in question.'"  *In re*

20 *Tobacco II Cases*, 46 Cal. 4th 298 at 327 (quoting *Engalla v. Permanente Medical Group, Inc.* 15

21 Cal. 4th 951, 976–977 (1997)) (internal citations omitted).

22      California courts have expressly adopted the "reasonable consumer" standard for

23 adjudicating the materiality of an alleged misrepresentation.  *See In re Google AdWords Litig.*, 5:08-

24 CV-3369 EJD, 2012 WL 28068 at *8 (N.D. Cal. Jan. 5, 2012) (citing *In re Tobacco II Cases*, 46

25 Cal. 4th at 327).  For the reasons already discussed, Plaintiff has failed to allege facts giving "facial

26 plausibility" to his claim that pollen (and its removal from honey) is of material concern to the

27 ordinary consumer.  The Second Amended Complaint provides no indication that the presence or

28 absence of pollen "play[s] a substantial part" in the reasonable consumer's decision to purchase

honey.  *In re Tobacco II Cases*, 46 Cal. 4th 298 at 326.  Again it is noteworthy that federal standards define "Grade A" as honey free from pollen grain, and states and dictionaries have consistently defined honey without regard to pollen content.  The record before the Court suggests a "jury could not reasonably find that a reasonable man would have been influenced by" the failure to disclose the filtration of pollen.  *Id.* at 327.  As such, Plaintiff's CLRA and UCL causes of action premised on nondisclosure of a material fact do not state a viable claim under Rule 12(b)(6).

### 3.   Implied Warranty

Plaintiff's final claim for relief is based on California's implied warranty of merchantability. The implied warranty of merchantability, codified at Cal. Com. Code § 2314, states that "[g]oods to be merchantable must be at least such as" to "[p]ass without objection in the trade, . . . [a]re fit for the ordinary purposes for which such goods are used," and "[c]onform to the promises or affirmations of fact made on the container or label if any."  *Id.* § 2314(2).   Brod alleges that "Defendant violated its implied warranties in that the Sue Bee Honey was not merchantable in the State of California, does not comply with the ordinary standards for such goods, and is not of the accepted standards of quality of such goods."  SAC ¶ 63.  Plaintiff supports his charge by alleging that Sue Bee Honey's "pollen was unnecessarily removed, which removal was not unavoidable in the removal of foreign inorganic or organic matter, and is in contravention of the explicit statutory standards for honey in the State of California."  *Id*.  Plaintiff's brief clarifies that "[w]hile the honey is not alleged to be defective or noncomestible, it is properly alleged to be of non-conforming quality and labeling and of less value than honey which complies with state standards."  Pl.'s Opp. Br. at 19.

California's implied warranty of merchantability "does not impose a general requirement that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality."  *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (citations and quotation marks omitted).  The Court has already found that Sioux Honey's denomination of Sue Bee Honey as "Honey" complies with the "common or usual name" requirement of § 343(i) of the FDCA.  *Brod*, 2012 WL 3987516 at *8.  The Court has also found *supra* that Plaintiff's complaint fails to identify any disclosure provision of the California Food and Agricultural Code

United States District Court

For the Northern District of California

1    with which Sue Bee Honey is noncompliant, including the Code's food labeling and content

2    disclosure provisions.  Indeed, Food & Agric. Code § 29611(c) requires honey sold in the state to be

3    marked with "[o]ne of the United States grades which are established for honey by the United States

4    Department of Agriculture."  *Id.* § 29611(c).  As previously noted, Sue Bee Honey is marked "Grade

5    A," defined by former federal regulations as honey from which pollen has been filtered.  *See* 16 Fed.

6    Reg. 2465-66.  On these facts, the Court cannot conclude that Sue Bee Honey would not "pass

7    without objection in the trade," or that it does not "conform to the promises or affirmations of fact

8    made on the container or label."  Cal. Com. Code § 2314(2).

9         Nor can the Court conclude that the jar of Sue Bee Honey purchased by Plaintiff was not "fit

10   for the ordinary purposes for which such goods are used."  Cal. Com. Code § 2314(2).  "To prove

11   breach of the implied warranty of merchantability, the plaintiff must prove that . . . the product was

12   not of the same quality as those generally acceptable in the trade, or was not fit for the ordinary

13   purposes for which the product is used, or did not conform to the quality established by the parties'

14   prior dealings or by usage of trade, . . . [and] the failure of the product to have the expected quality

15   was a substantial factor in causing the plaintiff's harm."  *Andrade v. Pangborn Corp.*, C 02-3771

16   PVT, 2004 WL 2480708 (N.D. Cal. Oct. 22, 2004).  Liability rests under this statutory provision "if

17   the goods contain an impurity of such a nature as to render them unusable, and therefore unsalable,

18   for the general uses and purposes of goods of the kind described."  *Burr v. Sherwin Williams Co.*, 42

19   Cal. 2d 682, 694 (1954).  As discussed *supra*, Plaintiff's complaint has not pled any facts in support

20   of his contention that Sue Bee Honey was not "fit for the *ordinary* purposes for which the product is

21   used."  *Id.* (emphasis added).  He has not pled sufficient factual content to lend "facial plausibility"

22   to his claim that Sue Bee Honey was unfit for the ordinary purposes to which the ordinary user (as

23   opposed to the specialized consumer) would subject the product.  *See Ashcroft v. Iqbal*, 129 S. Ct. at

24   1949.  Consequently, Plaintiff's implied warranty cause of action fails to meet the pleading

25   standards imposed by Fed. R. Civ. P. 8.

26   E.    Commerce Clause

27        Sioux Honey further argues that California's laws regulating the sale of honey violate the

28   dormant Commerce Clause.  *See* Def.'s Motion to Dismiss at 18-19.  Defendant bases its argument

on the belief that "one set of label rules" would "apply in California and another for everywhere else." *Id.* at 19.  The Supreme Court has held, "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  As this Court holds that Plaintiff's state law labeling and disclosure claims are either preempted by the FDCA or otherwise not in accordance with California law, Defendant's Commerce Clause argument is moot.

## IV.   CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** Sioux Honey's motion to dismiss.  While Plaintiff has standing to assert his claims under Article III, he has not shown that Sioux Honey has a duty under state law to disclose to purchasers of Sue Bee Honey that all naturally occurring pollen has been removed from the product.  Nor has Plaintiff alleged sufficient facts to support his state law claims that Defendant's nondisclosure exposes it to liability under the causes of action advanced in the Second Amended Complaint.

Rule 15 of the Federal Rules of Civil Procedure mandates that leave to amend "be freely given when justice so requires."  Fed. R. Civ. P. 15.  "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003).  *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (implying leave to amend should be granted in the absence of undue delay, bad faith or dilatory motive, or undue prejudice to the opposing party, or futility of amendment).  However, "[l]eave to amend need not be given" under Rule 15 if it would be

///

///

///

///

///

///

///

futile to do so." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court concludes that any further amendment to the complaint beyond the Second Amended Complaint herein would be futile. This dismissal is, therefore, with prejudice. The Clerk shall enter judgment and close the file.

This order disposes of Docket No. 56.


IT IS SO ORDERED.


Dated:  February 27, 2013

_____
EDWARD M. CHEN
United States District Judge